**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-80467-EA**

NEWSMAX BROADCASTING, LLC,

       *Plaintiff*,

   v.

FOX CORPORATION AND FOX NEWS
NETWORK, LLC,

       *Defendants*.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO STAY DISCOVERY**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 4

    A.    Newsmax Forum Shops By Refiling This Case In Wisconsin And Fox Moves To Transfer The Case Back To This Court............................................................. 4

    B.    Fox Moves To Dismiss The Complaint In Its Entirety And To Stay Discovery ................................................................................................................... 5

    C.    Newsmax Seeks Competitively Sensitive Document Discovery While Evading Basic Interrogatories Seeking the Factual Basis For Its Claims.............. 7

    D.    The Western District Of Wisconsin Transfers The Case Back To This Court In Response To Newsmax's "Forum (Or At Least Judge) Shopping." .................. 8

LEGAL STANDARD..................................................................................................... 9

ARGUMENT ................................................................................................................. 9

I.    There Is Good Cause To Stay Discovery Until Fox's Motion To Dismiss Is Decided.. ................................................................................................................. 10

    A.    Fox's Motion Is Likely To Dispose Of All Newsmax's Claims and Eliminate The Need For Any Discovery. ................................................................. 10

    B.    Newsmax Should Not Be Permitted To Use A Fishing Expedition In Discovery To Shore Up Its Defective Complaint. ................................................. 12

    C.    The Uniquely Heavy Burdens of Antitrust Discovery, The Competitively Sensitive Nature Of The Documents Newsmax Seeks To Discover From Fox, And Conserving Judicial Resources All Favor A Stay. ...................................... 14

II.    Newsmax Will Not Be Harmed By A Stay. .................................................... 18

III.    The Wisconsin Decision Refusing To Stay Discovery Four Months Ago Under A Different Standard And Different Facts Provides No Basis For Denying This Motion.................................................................................................................. 19

CONCLUSION............................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*42nd Parallel N. v. E St. Denim Co.*,
   286 F.3d 401 (7th Cir. 2002) ...................................................................................................12

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
   683 F.3d 328 (7th Cir. 2012) ...................................................................................................11

*Allianz Global Inv. GmbH v. Bank of Am. Corp.*,
   463 F. Supp. 3d 409 (S.D.N.Y. 2020)......................................................................................17

*Am. President Lines, LLC v. Matson, Inc.*,
   633 F. Supp. 3d 209 (D.D.C. 2022) .........................................................................................11

*Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*,
   15 F.4th 831 (7th Cir. 2021) ....................................................................................................14

*Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*,
   61 F.R.D. 115 (N.D. Ga. 1972)................................................................................................13

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................3, 14, 15, 16

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) .................................................................................................12

*Carter Hawley Hale Stores, Inc. v. Limited, Inc.*,
   587 F. Supp. 246 (C.D. Cal. 1984) ..........................................................................................12

*Chevaldina v. Katz*,
   2017 WL 6372620 (S.D. Fla. Aug. 28, 2017).........................................................................18

*Chudasama v. Mazda Motor Corp.*,
   123 F.3d 1353 (11th Cir. 1997) .................................................................................... *passim*

*DSM Desotech Inc. v. 3D Sys. Corp.*,
   2008 WL 4812440 (N.D. Ill. Oct. 28, 2008)......................................................................16, 17

*Flying J Inc. v. TA Operating Corp.*,
   2007 WL 1302756 (D. Utah May 2, 2007)...............................................................................13

*G.L. Homes of Fla. Corp. v. Akel Homes LLC et al.*,
   No. 9:25-cv-80856-AMC, Dkt. 82 (S.D. Fla. Apr. 24, 2026)...................................................11

*GEICO v. Glassco Inc.*,
No. 8:19-cv-01950-T-23JSS, Dkt. 96 (M.D. Fla. July 31, 2020) ............................................12

*Goldstein v. Costco Wholesale Corp.*,
2021 WL 2827757 (S.D. Fla. July 8, 2021)............................................................................19

*In re Graphics Processing Units Antitrust Litig.*,
2007 WL 2127577 (N.D. Cal. July 24, 2007)........................................................................18

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ..............................................................................................11

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
797 F.3d 538 (8th Cir. 2015) ................................................................................................16

*Isaiah v. JPMorgan Chase Bank*,
960 F.3d 1296 (11th Cir. 2020) ....................................................................................2, 9, 10

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
2007 WL 4373980 (N.D. Ga. Dec. 11, 2007), *aff'd*, 626 F.3d 1327 (11th Cir.
2010) .....................................................................................................................................15

*Jones Creek Invs., LLC v. Columbia Cnty., Ga.*,
2012 WL 12898402 (S.D. Ga. Nov. 8, 2012)........................................................................13

*Kaplan v. Kaplan*,
2011 WL 4596054 (M.D. Fla. Oct. 3, 2011) .........................................................................13

*Kaylor v. Fields*,
661 F.2d 1177 (8th Cir. 1981) ..............................................................................................14

*Khan v. Rundle*,
2006 WL 8433502 (S.D. Fla. July 17, 2006).....................................................................9, 15

*In re LTL Shipping Servs. Antitrust Litig.*,
2009 WL 323219 (N.D. Ga. Jan. 28, 2009)...........................................................................15

*McCabe v. Foley*,
233 F.R.D. 683 (M.D. Fla. 2006)............................................................................................9

*McGonigle v. Pure Green Franchise Corp.*,
2026 WL 111338 (S.D. Fla. Jan. 15, 2026) ..........................................................................20

*Moore v. Potter*,
141 F. App'x 803 (11th Cir. 2005) .......................................................................................20

*Morrison v. Fam. Dollar Stores, LLC*,
2025 WL 1368801 (S.D. Fla. Apr. 1, 2025) ..........................................................................11

*Newsmax Broad., LLC v. Fox Corp.*,
No. 25-cv-81091-AMC (S.D. Fla. Sept. 3, 2025)................................................................4, 5

*Nexstar Broad., Inc. v. Granite Broad. Corp.*,
2011 WL 4345432 (N.D. Ind. Sept. 15, 2011) ........................................................................16

*NYNEX Corp. v. Discon, Inc.*,
525 U.S. 128 (1998).................................................................................................................12

*Olufemi v. Exclusive Ass'n Mgmt.*,
2024 WL 710547 (11th Cir. Feb. 21, 2024) .....................................................................2, 9, 10

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
917 F.3d 1249 (11th Cir. 2019) ..................................................................................3, 4, 10, 15

*Reel Games, Inc. v. Euro Game Tech., Ltd.*,
2025 WL 857774 (S.D. Fla. Feb. 11, 2025) ...........................................................................19

*Riley v. Info. Sys. Audit & Control Ass'n, Inc.*,
2023 WL 3997075 (N.D. Ill. June 14, 2023).........................................................................16

*Robinson Steel Co. v. Caterpillar, Inc.*,
2012 WL 3245987 (N.D. Ind. Aug. 6, 2012)..........................................................................13

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ..................................................................................................16

*Skuraskis v. NationsBenefits Holdings, LLC*,
717 F. Supp. 3d 1221 (S.D. Fla. 2023) .............................................................................11, 14

*Solar Star Sys., LLC v. Bellsouth Telecomm., Inc.*,
2011 WL 1226119 (S.D. Fla. Mar. 30, 2011)...........................................................................9

*Subspace Omega, LLC v. Amazon Web Servs., Inc.*,
2024 WL 4451404 (W.D. Wash. Oct. 9, 2024) .....................................................................16

*In re Sulfuric Acid Antitrust Litig.*,
231 F.R.D. 331 (N.D. Ill. 2005)..............................................................................................16

*Tanaka v. USC*,
252 F.3d 1059 (9th Cir. 2001) ................................................................................................11

*Taylor v. Serv. Corp. Int'l*,
2020 WL 6118779 (S.D. Fla. Oct. 16, 2020)..........................................................................14

*Textile USA, Inc. v. Diageo N. Am., Inc.*,
2016 WL 11317301 (S.D. Fla. June 8, 2016) .....................................................................9, 10

*United States v. United States Gypsum Co.*,
  438 U.S. 422 (1978)................................................................................17

*Varga v. Palm Beach Cap. Mgmt., LLC*,
  2010 WL 8510622 (S.D. Fla. Sept. 3, 2010) ........................................2, 9

*Venisee v. Miami-Dade Cnty.*,
  2025 WL 1529683 (S.D. Fla. May 29, 2025) ..........................................14

*Whatru Holding LLC v. Bouncing Angels Inc.*,
  2014 WL 12629952 (C.D. Cal. Sept. 18, 2014) ......................................19

**Other Authorities**

S.D. Fla. L.R. 7.1(a)(3) .....................................................................................1

S.D. Fla. L.R. 7.1(e)........................................................................................19

S.D. Fla. L.R. 7.2 .............................................................................................8

Fed. R. Civ. P. 12(b)(6)...................................................................................11

Fed. R. Civ. P. 33 ...........................................................................................13

**INTRODUCTION**

On September 4, 2025, Judge Aileen Cannon of this Court dismissed Newsmax's original antitrust complaint as an impermissible "shotgun pleading" and ordered Newsmax to replead within one week. Instead, in a blatant effort to evade that adverse ruling, Newsmax, a Florida corporation, refiled a virtually identical complaint riddled with pleading deficiencies in the Western District of Wisconsin. On April 23, 2026, that court transferred the case back to this Court, holding that Newsmax had "engaged in forum (or at least judge) shopping." Dkt. 56 at 6. Under these circumstances, Newsmax should not be permitted discovery of competitively sensitive documents on a complaint that is legally deficient and unsupported by plausible allegations of fact.

Defendants Fox Corporation and Fox News Network, LLC (collectively, "Fox") move to stay discovery until the Court has resolved Fox's motion to dismiss the complaint entirely for failure to state a claim—a motion that has been pending since November 2025. Dkt. 30. Newsmax, which purports to be one of Fox's direct competitors, asserts antitrust claims that are devoid of factual or legal support, but Newsmax now seeks discovery of Fox's commercially and competitively sensitive materials—including terms of its carriage agreements with distributors, such as cable and satellite TV companies, and internal communications showing Fox's confidential business strategies. Fox's motion to stay discovery rests, at bottom, on a common-sense principle squarely supported by Eleventh Circuit law: Fox should not be subjected to the burdens of discovery—especially the exceptional burdens of antitrust discovery—and should not be required to turn over some of its most competitively sensitive documents to a competitor until the Court has decided that Newsmax's complaint can survive a motion to dismiss.

Four factors strongly favor a stay under these circumstances.

***First***, Fox's motion to dismiss, if granted, will eliminate this case entirely, and that fact alone favors postponing the burdens of discovery until the motion has been decided. The Eleventh

Circuit has explained repeatedly that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should … be resolved before discovery begins." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308–1309 (11th Cir. 2020) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)).  Indeed, where, as here, a "motion to dismiss present[s] a potential resolution to the case that require[s] no further findings of fact[s], this Court's precedent dictates that the district court should rule on the motion before discovery." *Olufemi v. Exclusive Ass'n Mgmt.*, 2024 WL 710547, at *1 (11th Cir. Feb. 21, 2024) (citation omitted).  Avoiding the burdens of discovery in a case that may well be dismissed constitutes "good cause" and a "reasonable[]" basis for a stay.  *Varga v. Palm Beach Cap. Mgmt., LLC*, 2010 WL 8510622, at *1 (S.D. Fla. Sept. 3, 2010).  And under this Court's practice of using a "preliminary peek" at the merits of a motion to dismiss to determine whether it will likely eliminate the need for discovery, a peek at Fox's motion readily shows both that it is a facial legal challenge that would dispose of this case entirely and that it is likely to prove meritorious.  The motion to dismiss sets out multiple fatal defects in Newsmax's claims, including failure even to allege a plausible antitrust market and failure to allege any antitrust injury.

*Second*, Newsmax's recent responses to interrogatories confirm that the complaint is deficient.  When Fox asked Newsmax to provide the factual basis for key allegations, Newsmax responded with evasion—it simply referred back to other allegations in the complaint without providing any facts to support them.  Newsmax's inability to respond to simple interrogatories asking for the factual basis behind key allegations suggests that it has no basis for those allegations and is now on a fishing expedition in discovery hoping to find something to rescue its deficient complaint.  The Court should not permit discovery to go forward under those circumstances.

*Third*, the Eleventh Circuit and other courts across the country have warned against

sending parties "into the expensive and settlement-inducing quagmire of antitrust discovery" unless a complaint can survive a motion to dismiss. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.,* 917 F.3d 1249, 1267 (11th Cir. 2019).  The Supreme Court has cautioned that courts must not "forget that proceeding to antitrust discovery can be expensive," and should "tak[e] care to require allegations" sufficient to state a claim "to avoid the potentially enormous expense of discovery." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 558–59 (2007).  The uniquely expensive burdens of antitrust discovery add an additional factor on the scales favoring a stay until the Court has decided whether Newsmax's complaint can survive a motion to dismiss.

*Fourth*, Newsmax's discovery requests make clear that one of Newsmax's primary objectives is getting access to some of Fox's most competitively sensitive documents, including carriage agreements with distributors (with pricing information) and communications about negotiating such agreements.  Sharing such information with a competitor threatens to harm not only Fox, but also the competitive process itself—which is why the antitrust laws ordinarily prohibit sharing such information with a competitor.  Fox should not be forced to hand over that information to a competitor—or even to a competitor's lawyers under a protective order—until this Court has decided that Newsmax's complaint states a claim sufficient to justify discovery.

Newsmax may argue that, while this case was on a forum-shopping detour in Wisconsin, a magistrate judge already denied a motion from Fox to stay discovery and that decision should not be disturbed.  That argument is unavailing.  The Wisconsin magistrate judge applied a different legal standard inapplicable in this Court and under which motions to stay discovery are disfavored, and the court would not even evaluate the likelihood that a stay would avoid needless expense because the pending motion to dismiss might eliminate the case entirely.  Indeed, the only reason that standard applied was Newsmax's brazen forum shopping.  Newsmax should not be permitted

to lock in a benefit from its forum shopping and thereby force both Fox and this Court to waste resources in the "quagmire of antitrust discovery," *Quality Auto*, 917 F.3d at 1267, when Fox's motion to stay discovery would be decided differently under the law of this district.

In addition, there are also recent factual developments available to this Court that were not in front of the Wisconsin court.  Newsmax's stonewalling in discovery responses suggests it had no basis for key allegations in the complaint.  Instead, Newsmax wants discovery of Fox's most competitively sensitive documents in the hope that it can find something to shore up a defective complaint.  The Wisconsin court could not take that factor into account, and it overwhelmingly favors staying discovery until Fox's motion to dismiss has been decided.

## BACKGROUND

### A.      Newsmax Forum Shops By Refiling This Case In Wisconsin And Fox Moves To Transfer The Case Back To This Court

Newsmax, a Florida company, originally filed this antitrust suit against Fox in this Court on September 3, 2025.  *Newsmax Broad., LLC v. Fox Corp.*, No. 25-cv-81091-AMC (S.D. Fla. Sept. 3, 2025), Dkt. 1.  The next day, Judge Cannon *sua sponte* dismissed the complaint without prejudice as an impermissible "shotgun pleading."  *Id.*, Dkt. 9 at 1–2.  Judge Cannon ordered Newsmax to file any amended complaint by September 11, 2025, and directed that each count must "contain specific factual allegations that support each cause of action within each count."  *Id.* at 2.  The Court also warned that failure to comply could "result in dismissal of the case without further notice."  *Id.*  On September 11—the day of the deadline—instead of amending, Newsmax voluntarily dismissed the case in this Court and, a few hours later, filed a materially identical complaint in the Western District of Wisconsin.  Dkt. 1.  In response to that forum shopping, Fox promptly moved to transfer the case back to this Court on September 22, 2025.  Dkt. 9.

The complaint asserted claims for unreasonable restraint of trade under Section 1 of the

Sherman Act, *see* Dkt. 1 ¶¶ 83–90, unlawfully maintaining a monopoly under Section 2 of the Sherman Act, *id.* ¶¶ 91–98, unlawful "block-booking" under Section 1 of the Sherman Act, *id.* ¶¶ 99–107, and parallel violations of the Wisconsin Antitrust Act, *id.* ¶¶ 108–34.[1]  In relevant part, the complaint alleges that Newsmax and Fox compete to license content in a purported "market" consisting only of "distribution of right-leaning pay TV news."  *Id.* ¶¶ 26, 68.  Both parties negotiate carriage agreements with Multi-Channel Video Programming Distributors ("MVPDs") and virtual MVPDs ("vMVPDs") to secure distribution for their respective channels.  *Id.* ¶ 68.  These agreements set the terms for distribution of Fox's and Newsmax's channels, including the price the distributor pays to license Fox's or Newsmax's content and the placement of channels into various "tiers" that are "offered to subscribers at different price points."  *Id.* ¶ 25.

Newsmax alleges that because consumers, MVPDs, and vMVPDs view Fox News as a "must have" channel, Fox has been able to negotiate carriage agreements that are favorable to Fox and detrimental to Newsmax.  *Id.* ¶¶ 41, 46.  Specifically, Newsmax alleges—without any identifiable basis—that Fox has exclusive carriage terms that prohibit distributors from carrying Newsmax at all, *id.* ¶ 52—an assertion that contradicts Newsmax's own filings with the SEC stating that Newsmax "has carriage agreements with *every* top pay TV operator in the U.S." Newsmax Inc., Current Report (Form 8-K), at Ex. 99.1 (May 8, 2025) (emphasis added). Alternatively, Newsmax alleges that Fox's agreements require distributors that carry Newsmax to carry additional Fox channels in their "basic" tier, thereby increasing their costs.  Dkt. 1 ¶¶ 53–54.

**B.  Fox Moves To Dismiss The Complaint In Its Entirety And To Stay Discovery**

Fox moved to dismiss the complaint in its entirety on November 25, 2025.  Dkt. 30.  Among

---

[1] The original complaint filed in this Court asserted parallel state-law claims under Florida law, *Newsmax Broad., LLC v. Fox Corp.*, No. 25-cv-81091-AMC (S.D. Fla. Sept. 3, 2025), Dkt. 1 ¶¶ 93–104, which were changed to Wisconsin law when Newsmax re-filed in Wisconsin.

other points, the motion to dismiss explains that (1) Newsmax has alleged an artificially narrow market for "right-leaning pay TV news" that is not only implausible on its face, but is contradicted both by Newsmax's own SEC filings identifying its competitors and by articles cited in the complaint; (2) Newsmax has failed to allege any facts plausibly suggesting that Fox's carriage agreements actually contain the terms alleged by Newsmax; and (3) Newsmax has failed to allege antitrust injury, the existence of a monopoly in right-leaning news, or anticompetitive conduct by Fox to maintain such a monopoly.  Dkt. 31.

In response to Fox's motion to dismiss, Newsmax withdrew both of its "block-booking" claims, dismissing two of the six counts in the complaint.  Dkt. 40 at 43.  The motion to dismiss has been fully briefed for nearly three months.

While Fox's motion to transfer and motion to dismiss were pending, Fox also moved to stay discovery until the court had ruled on those motions.  Dkt. 35.  Fox explained that a ruling in Fox's favor would end litigation in that district and that Fox would suffer harm if it were forced to "disclose its most competitively sensitive documents and pricing information to a direct competitor (or even to its competitor's counsel)" before the court resolved a motion that could very well end the litigation and eliminate the need for any discovery.  Dkt. 36 at 1.

A magistrate judge heard argument on the motion to stay on January 13, 2026, and denied it from the bench.  The magistrate judge's standing order states categorically that "[t]he court does not stay discovery when the defendant files a motion to dismiss before the preliminary pretrial conference."  Magistrate Judge Anita Boor, Standing Order for Preliminary Pretrial Conferences, at 2 (W.D. Wis. May 7, 2024), tinyurl.com/Boor-SO ("Wis. M.J. Standing Order").  At the hearing, the magistrate judge noted that, under local precedent, **"stays are generally disfavored in this district,"** Dkt. 43 at 5 (emphasis added), and ultimately denied the motion on the ground that it

faced **"pretty strong headwinds in this district"** because staying discovery **"really does go against the grain"** in the Western District of Wisconsin, *id.* at 23 (emphasis added). The magistrate judge expressly **declined to make "any predictions as to whether the motion [to dismiss] is ultimately going to be successful**." *Id.* at 6. She acknowledged that Fox's motion to dismiss "has arguably already been partially successful because some claims have been dropped," *id.* at 24, and she conceded that Fox "could very well win the day on the motion to dismiss," *id.*, but concluded that there were no "special circumstances," *id.* at 6, that would warrant a stay under local precedent. The magistrate judge also established a schedule for the case, including a trial date in June 2027. *See* Dkt. 42.

C. **Newsmax Seeks Competitively Sensitive Document Discovery While Evading Basic Interrogatories Seeking the Factual Basis For Its Claims**

Almost a month later, Newsmax served its first discovery requests on February 11, 2026. As Fox anticipated, Newsmax sought Fox's most competitively sensitive documents—its carriage agreements with distributors. Indeed, Newsmax unreasonably sought discovery of *all* Fox's carriage agreements dating back to 2013—a year before Newsmax TV even existed. Dkt. 51 at 2.

Fox also served discovery, including interrogatories asking for the factual basis—if there were any—for multiple assertions in the complaint about the terms in Fox's carriage agreements and about Newsmax supposedly being denied carriage by some distributors. Dkt. 55-1. Fox sought the basis for these allegations because many of Newsmax's assertions made no sense (and contradicted Newsmax's public statements that it was carried by all major distributors), and it seemed possible that Newsmax lacked any real basis for many assertions in the complaint. Tellingly, Newsmax's responses tended to confirm that suspicion, because Newsmax effectively refused to provide *any* basis for multiple allegations central to the complaint. *See* Dkt. 55-2. For instance, Fox asked Newsmax to identify "each individual" who has communicated to Newsmax

that its carriage agreement was denied, delayed, or adversely tiered because of Fox, and to describe those communications. *Id.* at 9. In response, Newsmax stonewalled. Rather than identifying any actual communication with any person, Newsmax asserted that it "is aware that Fox uses carriage agreements and 'gentlemen's agreements' that restrict or prevent Distributors from contracting with Newsmax *based on general discussions with industry participants*." *Id.* at 9–10 (emphasis added). Similarly, Fox asked Newsmax to identify distributors with which it has been unable to contract because of Fox's alleged agreements and to describe in detail the basis for that contention. *Id.* at 7–8. In response, Newsmax simply pointed back to allegations in the complaint. In fact, Newsmax repeatedly responded to interrogatories seeking the factual basis for allegations in the complaint by referring back to other allegations in the complaint. *Id.* at 5, 8–10.

After the parties had met and conferred, on April 20, 2026, Newsmax moved to compel production of Fox's carriage agreements and "associated communications." Dkt. 51. The next day, Fox moved to compel Newsmax to provide proper responses to six interrogatories. Dkt. 54.

**D.      The Western District Of Wisconsin Transfers The Case Back To This Court In Response To Newsmax's "Forum (Or At Least Judge) Shopping."**

On April 23, 2026, the Western District of Wisconsin granted Fox's motion to transfer, primarily on the ground that Newsmax was forum shopping. The court explained that, "[b]ecause [Newsmax] has failed to provide any explanation why this case should be tried in Wisconsin or why it dismissed the Florida action to refile here after receiving an adverse order, the court is left with the conclusion that [Newsmax] engaged in forum (or at least judge) shopping." Dkt. 56 at 6. "[W]ith no good reason for filing suit in this district," the court concluded, Newsmax's "connection to Florida and its apparent forum shopping tip the scales in favor of transfer." *Id.* at 7. The same day, the Wisconsin court transferred the case to this Court. *See* Dkt. 57.

Both Newsmax's and Fox's motions to compel, Dkts. 51, 54, remain pending. Under Local

Rule 7.2, any opposition to either motion is due May 7, 2026.

## LEGAL STANDARD

A stay of discovery "is appropriate where the movant shows 'good cause and reasonableness'" support a stay, *Varga v.*, *LLC*, 2010 WL 8510622, at \*1 (S.D. Fla. Sept. 3, 2010), and "courts have routinely found that staying discovery is appropriate … when resolution of a preliminary motion may dispose of the entire action." *Textile USA, Inc. v. Diageo N. Am., Inc.*, 2016 WL 11317301, at \*1 (S.D. Fla. June 8, 2016) (quotation omitted); *Solar Star Sys., LLC v. Bellsouth Telecomm., Inc.*, 2011 WL 1226119, at \*1 (S.D. Fla. Mar. 30, 2011) ("Potentially dispositive motions filed prior to discovery weigh heavily in favor of issuing a stay."). "In deciding whether to stay discovery pending resolution of a pending motion, the Court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery," *Khan v. Rundle*, 2006 WL 8433502, at \*1 (S.D. Fla. July 17, 2006) (quoting *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006)), and in determining that balance it may be "helpful, and/or necessary" to take a "preliminary peek" at the motion to assess whether it may be dispositive, *id.*

The Eleventh Circuit has repeatedly explained that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should … be resolved before discovery begins." *Isaiah*, 960 F.3d at 1308–1309. Indeed, when a "motion to dismiss present[s] a potential resolution to the case that require[s] no further findings of fact[s], this Court's precedent dictates that the district court should rule on the motion before discovery." *Olufemi*, 2024 WL 710547, at \*1.

## ARGUMENT

The Court should stay discovery until it has ruled on Fox's motion to dismiss because that motion will likely dispose of the entire case and eliminate any need for discovery. Fox's motion

has already caused Newsmax to withdraw two of its six causes of action, and the motion identifies multiple fatal deficiencies that doom all of Newsmax's antitrust claims.  In addition, Newsmax's evasiveness in its discovery responses confirms that it lacks a factual basis for its claims and is instead engaged in a fishing expedition hoping that access to Fox's most competitively sensitive documents will uncover some support for its claims.  The Court should not permit discovery to proceed under these circumstances.  Newsmax cannot point to any prejudice it would suffer from a short stay of discovery until the motion to dismiss has been decided.

**I.      There Is Good Cause To Stay Discovery Until Fox's Motion To Dismiss Is Decided.**

> **A.      Fox's Motion Is Likely To Dispose Of All Newsmax's Claims And Eliminate The Need For Any Discovery.**

Good cause exists to stay discovery because Fox's motion to dismiss is "a preliminary motion [that] may dispose of the entire action."  *Textile USA*, 2016 WL 11317301, at *1.  The Eleventh Circuit has repeatedly instructed that motions like Fox's—that is, "[f]acial challenges to the legal sufficiency" of a complaint—"should … be resolved before discovery begins."  *Isaiah*, 960 F.3d at 1308–1309.  "[N]either the parties nor the court have any need for discovery before the court rules on [such a] motion."  *Chudasama*, 123 F.3d at 1367.  And because the motion may eliminate the need for any discovery at all, it makes no sense to subject the parties to the burdens of discovery until such a motion has been resolved.  *See, e.g.*, *Isaiah*, 960 F.3d at 1308; *Olufemi*, 2024 WL 710547, at *1 (stay appropriate where "the motion to dismiss presented a potential resolution to the case that required no further findings of fact").  In fact, Fox's motion has already caused Newsmax to abandon two of its six claims.  *See* Dkt. 40 at 43.  Fox should not be thrust into the uniquely onerous "quagmire of antitrust discovery," *Quality Auto*, 917 F.3d at 1267, until the Court has decided whether Newsmax's remaining claims can survive the motion to dismiss.  *See, e.g., Skuraskis v. NationsBenefits Holdings, LLC*, 717 F. Supp. 3d 1221, 1228 (S.D. Fla. 2023).

Taking a "preliminary peek" at Fox's motion to dismiss to inform the balancing of interests strongly confirms that a stay is warranted.  "Colorable challenges" that may lead to dismissing Newsmax's claims are sufficient to support a stay.  *Id.* at 1229; *accord Morrison v. Fam. Dollar Stores, LLC*, 2025 WL 1368801, at *1 (S.D. Fla. Apr. 1, 2025) (granting stay of discovery where "preliminary peek" revealed that "Defendants *may* be successful in obtaining dismissal," and "[t]o be clear, *may* does not mean *will*").  Fox's motion more than clears that threshold.  It shows multiple defects in the complaint that will likely lead to dismissing the case entirely.

For example, Newsmax fails to define a relevant antitrust market.  Properly defining a relevant market is a "threshold requirement for a valid antitrust claim," *Am. President Lines, LLC v. Matson, Inc.,* 633 F. Supp. 3d 209, 222 (D.D.C. 2022), because "[i]t is the existence of a commercial market that implicates the Sherman Act in the first instance," *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 337 (7th Cir. 2012).  "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. USC,* 252 F.3d 1059, 1063 (9th Cir. 2001) (citation omitted); *see also G.L. Homes of Fla. Corp. v. Akel Homes LLC et al.*, No. 9:25-cv-80856-AMC, Dkt. 82 at 13 (S.D. Fla. Apr. 24, 2026) (Cannon, J.) ("[I]t is clear that [antitrust plaintiffs] have failed to meet their pleading burden to plausibly suggest a relevant market, warranting dismissal for failure to state a claim pursuant to Rule 12(b)(6).").  Newsmax alleges that Fox monopolized and unfairly restrained trade in the market for "right-leaning pay TV news."  As Fox explains in its motion to dismiss, Dkt. 31 at 9–19, that market is artificially narrow because it excludes obvious substitutes, *see, e.g.*, *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121–24 (9th Cir. 2018); it is contradicted by Newsmax's own SEC filings and materials cited in its complaint; and no court has *ever* attempted to define a market by reference to its subjective evaluation of news content's political viewpoint, *cf.*, *e.g.*, *Carter Hawley Hale Stores, Inc. v.*

-11-

*Limited, Inc.*, 587 F. Supp. 246, 252–53 (C.D. Cal. 1984) (rejecting attempt to define market by "amorphous" criteria that are "too subjective to be defined in economic terms").

Fox's motion further explains that Newsmax has wholly failed to allege antitrust injury, which is also fatal to Newsmax's claims.  A basic requirement of adequately pleading an antitrust claim is alleging injury to competition because the "[a]ntitrust laws protect *competition* and not *competitors*."  *42nd Parallel N. v. E St. Denim Co.*, 286 F.3d 401, 405 (7th Cir. 2002) (emphasis added).  A plaintiff therefore "must allege and prove harm, not just to a single competitor, but to the competitive process."  *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998).  Failure to do so dooms every one of Newsmax's claims.  To the extent that Newsmax purports to allege injury, it is injury only to itself, *see, e.g.*, Dkt. 1 ¶ 90 (alleging "lost or delayed distribution, impaired brand exposure, and reduced advertising and carriage revenue"), or a conclusory legal assertion, *see id.* ¶ 80 (alleging Fox "harmed . . . competition itself").  That will not do.  *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198, 1202 (9th Cir. 2012).  This deficiency provides a clear basis for staying discovery.  *See, e.g.*, *GEICO v. Glassco Inc.*, No. 8:19-cv-01950-T-23JSS, Dkt. 96 at 5 (M.D. Fla. July 31, 2020) (staying discovery on antitrust counterclaims because of "colorable pleading deficiencies" including "fail[ure] to adequately allege an antitrust injury").

**B.      Newsmax Should Not Be Permitted To Use A Fishing Expedition In Discovery To Shore Up Its Defective Complaint.**

Newsmax's recent conduct in discovery strongly confirms that many conclusory allegations in the complaint are baseless and that Newsmax's claims are likely to be dismissed.  In the meantime, Newsmax should not be permitted to go on a fishing expedition in discovery seeking to shore up its defective complaint.

As Fox's motion to compel explains in greater detail, Dkt. 54, Fox sent Newsmax straightforward interrogatories asking for the factual basis for critical allegations in the complaint.

-12-

*See id.* at 1 (citing Dkt. 1 ¶¶ 57, 60, 63, 101).  For example, Fox asked Newsmax to disclose its good-faith factual basis for alleging (among other things) that Fox maintained secret "gentlemen's agreements" with distributors to block Newsmax's carriage, *id.* (citing Dkt. 1 ¶ 60), that it used "its leverage" to exclude Newsmax from Fubo's Sports/News Package, *id.* (citing Dkt. 1 ¶ 57), that it employed "smear intimidation tactics" against its competitors, *id.* (citing Dkt. 1 ¶ 63), and that it loaded up its carriage agreements with "unfair 'drag-down' provisions," *id.* (citing Dkt. 1 ¶ 101).  In response, Newsmax offered only stonewalling and obfuscation.  Newsmax failed to point to any facts or any information from anyone supporting these assertions.  Instead, Newsmax largely cross-referenced other allegations in the complaint (plainly impermissible)[2] or vaguely gestured to unspecified "conversations" with unnamed "industry participants."  *Id.*

Newsmax's inability or refusal to answer straightforward questions about the factual basis for allegations in the complaint suggests that it had no basis for those allegations (or else that it is intentionally obstructing legitimate discovery).  *Id.* at 11.  At the same time, Newsmax pressed forward with a motion to compel seeking production of Fox's carriage agreements.  Dkt. 51.

That makes Newsmax's strategy transparent.  Newsmax filed a threadbare complaint with conclusory allegations about Fox's carriage agreements while lacking any facts to back up its

---

[2] *See, e.g.*, *Kaplan v. Kaplan*, 2011 WL 4596054, at *2 (M.D. Fla. Oct. 3, 2011) ("Answers to interrogatories should be complete in and of themselves.  Incorporation by reference to a separate document is not a responsive answer."); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 120 (N.D. Ga. 1972) ("[I]incorporation by reference of the allegations of a pleading is not a responsive and sufficient answer to an interrogatory."); *Jones Creek Invs., LLC v. Columbia Cnty., Ga.*, 2012 WL 12898402, at *5 (S.D. Ga. Nov. 8, 2012) ("Plaintiff cannot avoid answering interrogatories by referring the defendant to the complaint, no matter how detailed." (citation omitted)); *Flying J Inc. v. TA Operating Corp.*, 2007 WL 1302756, at *1 (D. Utah May 2, 2007) ("vague references to conversations … are not appropriate responses to [an] interrogator[y]" under Rule 33); *Robinson Steel Co. v. Caterpillar, Inc.*, 2012 WL 3245987, at *4 (N.D. Ind. Aug. 6, 2012) (a response to an interrogatory seeking identification of alleged communications must "specifically identify[] each oral communication," including "the date, place, type, substance, and persons who made and received the communication").

speculation.  And it is pressing a motion to compel to get its hands on Fox's carriage agreements (all the way back to 2013, no less) before the motion to dismiss is decided because it hopes that if it can rummage through those agreements before the case is dismissed, it may find something— anything—to allow it to amend its complaint to state a claim.  But that is precisely what *Twombly* forbids.  "*Twombly* bars the discover-first, plead later approach."  *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021).  As the Eleventh Circuit has explained, "[d]iscovery should follow the filing of a well-pleaded complaint.  It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim." *Chudasama*, 123 F.3d at 1367 (quoting *Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981)); *see also, e.g.*, *Venisee v. Miami-Dade Cnty.*, 2025 WL 1529683, at *3 (S.D. Fla. May 29, 2025) ("[T]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." (citation omitted)).  Newsmax's refusal to provide answers to straightforward questions about the basis for its claims confirms that discovery should be stayed until the motion to dismiss has been decided based on the allegations currently in the complaint. *See also, e.g.*, *Chudasama*, 123 F.3d at 1368 ("[D]elaying ruling on a motion to dismiss [an unmeritorious claim] until after the parties complete discovery encourages abusive discovery and, if the court ultimately dismisses the claim, imposes unnecessary costs.").[3]

### C. The Uniquely Heavy Burdens Of Antitrust Discovery, The Competitively Sensitive Nature Of The Documents Newsmax Seeks To Discover From Fox, And Conserving Judicial Resources All Favor A Stay.

Three additional considerations weigh overwhelmingly in favor of staying discovery.

---

[3] Even if Fox's motion to dismiss were likely only to *narrow* the issues in the case (as it already has by prompting Newsmax to abandon its block-booking claims), a stay would still be warranted. Courts in this district stay discovery where a motion to dismiss has the potential to "substantially impact the viability of claims" and "alter the scope of discovery" if it were granted even in part. *Skuraskis v. NationsBenefits Holdings, LLC*, 717 F. Supp. 3d 1221, 1231 (S.D. Fla. 2023); *accord Taylor v. Serv. Corp. Int'l*, 2020 WL 6118779, at *2 (S.D. Fla. Oct. 16, 2020).

*First,* the exceptional burdens of discovery in antitrust litigation strongly support a stay until the motion to dismiss has been decided. Courts considering whether to stay discovery must remain mindful of "the likely costs and burdens of proceeding with discovery" to assess the risk that a dispositive motion such as Fox's will ultimately "be granted and entirely eliminate the need for such discovery." *Khan*, 2006 WL 8433502, at *1 (quotation omitted). In weighing that balance, the uniquely high burden of discovery in antitrust cases is widely recognized. Indeed, in *Twombly* itself, the Supreme Court directed courts to remember "that proceeding to antitrust discovery can be expensive," and to "tak[e] care to require allegations" sufficient to state a claim "to avoid the potentially enormous expense of discovery." 550 U.S. at 558–59. Since *Twombly*, courts, including the Eleventh Circuit, have routinely warned against sending the parties "into the expensive and settlement-inducing quagmire of antitrust discovery" unless a complaint can survive a motion to dismiss. *Quality Auto*, 917 F.3d at 1267; *see also Jacobs v. Tempur-Pedic Int'l, Inc.*, 2007 WL 4373980, at *2 (N.D. Ga. Dec. 11, 2007) (recognizing that motions to dismiss "serve the useful function of ending non-meritorious cases before a defendant is subjected to possibly extensive discovery and litigation costs" and that this "is especially true in antitrust litigation"), *aff'd*, 626 F.3d 1327 (11th Cir. 2010); *In re LTL Shipping Servs. Antitrust Litig.*, 2009 WL 323219, at *12 (N.D. Ga. Jan. 28, 2009) (recognizing that "the pleading standard in antitrust cases announced in *Twombly* is rooted in the practical reality that in large antitrust cases the discovery process can be enormously expensive," and that requires courts "to insist upon pleadings that provide a factual basis showing that an antitrust claim is 'plausible' before subjecting antitrust defendants to potentially massive discovery proceedings").

In fact, "federal courts have been reasonably aggressive in weeding out meritless antitrust claims at the pleading stage." *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538,

-15-

543 (8th Cir. 2015) (quotation omitted).  And they have taken that approach precisely due to "the unusually high cost of discovery in antitrust cases, the limited success of judicial supervision in checking discovery abuse, and the threat that discovery expense will push cost-conscious defendants to settle even anemic cases."  *Id.* at 543 (quotations omitted).

Thus, courts across the country have recognized that "[d]iscovery concerns are particularly great in antitrust litigation, where discovery 'can quickly become enormously expensive and burdensome to defendants.'"  *Nexstar Broad., Inc. v. Granite Broad. Corp.*, 2011 WL 4345432, at *2 (N.D. Ind. Sept. 15, 2011) (quoting *DSM Desotech Inc. v. 3D Sys. Corp.*, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008)).  As a result, stays of discovery are regularly granted in antitrust actions where a motion to dismiss is pending.  *See, e.g. In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 & n.4 (N.D. Ill. 2005); *see also Subspace Omega, LLC v. Amazon Web Servs., Inc.*, 2024 WL 4451404, at *2 (W.D. Wash. Oct. 9, 2024) ("[I]n antitrust cases [a stay of discovery pending a Rule 12(b)(6) motion] especially makes sense because the costs of discovery in such actions are prohibitive." (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987))); *Riley v. Info. Sys. Audit & Control Ass'n, Inc.*, 2023 WL 3997075, at *1 (N.D. Ill. June 14, 2023) ("The costs of federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." (citation modified)).  Indeed, as some courts have observed, "to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*."  *DSM Desotech*, 2008 WL 4812440, at *3.  That reasoning applies here, and favors staying discovery.

*Second*, Newsmax has made clear that one of its primary objectives in discovery is to force Fox to hand over its commercially and competitively sensitive carriage agreements with

distributors, pricing information, and internal communications reflecting its confidential business strategies. Newsmax, of course, must negotiate its own carriage agreements (and prices for its network) with the very same distributors. Ordinarily, antitrust laws *prohibit* the sharing of such information between direct competitors, because it would promote collusion and damage the competitive process. *See, e.g.*, *United States v. United States Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) ("[e]xchanges of current price information" among competitors have "the greatest potential for generating anticompetitive effects and although not *per se* unlawful have consistently been held to violate the Sherman Act"); *Allianz Global Inv. GmbH v. Bank of Am. Corp.*, 463 F. Supp. 3d 409, 430 (S.D.N.Y. 2020) ("[T]he sharing of information between competitors constitutes circumstantial evidence of an antitrust conspiracy . . . .").

Even in the context of discovery under a protective order, turning over such information to a direct competitor—or a competitor's lawyers—raises significant concerns for potential harm to the competitive process. *See, e.g.*, *DSM Desotech*, 2008 WL 4812440, at *3 (staying discovery pending motion to dismiss where information sought, "in addition to being extensive, voluminous, and expensive to produce, is also highly sensitive subject matter to turn over to one's competitor"). Those concerns are heightened here because Newsmax has taken the position that members of its in-house counsel should have access to Fox's carriage agreements, notwithstanding their competitively sensitive nature. Fox should not be forced to turn over such information to Newsmax's lawyers (in-house or external) until the Court has decided that Newsmax's complaint can survive a motion to dismiss.

*Third*, in addition to sparing the *parties* the burdens of needless discovery, a stay would also ensure that *judicial* resources are not wasted on discovery disputes that may never need to be resolved. "[D]iscovery imposes burdens on the judicial system; scarce judicial resources must be

diverted from other cases to resolve discovery disputes." *Chudasama*, 123 F.3d at 1367–68. Newsmax has *already* wasted the time of multiple judges with its forum shopping. Dkt. 56 at 6. And even though discovery has barely started in this case, there already are two motions to compel. *See* Dkts. 51, 54. This Court should not waste additional scarce judicial resources wading into those motions—or any other discovery matters that may arise—when the motion to dismiss is likely to obviate any need to address any discovery issues. *See, e.g.*, *Chevaldina v. Katz*, 2017 WL 6372620, at *3 (S.D. Fla. Aug. 28, 2017) (stay of discovery warranted where "a dispositive motion may dispose of an entire case and preserve resources for all parties, including the Court").

## II.     Newsmax Will Not Be Harmed By A Stay.

Staying discovery until Fox's motion to dismiss has been resolved will not prejudice Newsmax in any way. To begin with, this case is still in its early stages. Although the case was first filed in September 2025, it was Newsmax's forum-shopping detour to Wisconsin that delayed progress and resulted in no court taking up Fox's motion to dismiss to determine whether it will dispose of the case entirely. And while discovery has started, it is still in its earliest stages and could be stopped now without causing any prejudice. Newsmax cannot claim any "compelling need for prompt discovery, such as might be the case if provisional relief were being sought or if testimony needed to be preserved due to ill health of a witness." *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007) (staying discovery). Indeed, Newsmax's entire approach to the case—including its improper forum-shopping side-show in Wisconsin—has belied any urgent need to move forward with discovery.

Finally, a stay would not impair Newsmax's ability to obtain discovery in the unlikely event that some part of the complaint survives. As in other cases in which courts have stayed discovery, a "stay of discovery now would not prejudice [Newsmax's] ability and timing to conduct any necessary discovery later." *Reel Games, Inc. v. Euro Game Tech., Ltd.*, 2025 WL

857774, at *1 (S.D. Fla. Feb. 11, 2025); *see also Goldstein v. Costco Wholesale Corp.*, 2021 WL 2827757, at *2 (S.D. Fla. July 8, 2021).  If any part of Newsmax's claims survive, the Court can adjust the case schedule to allow the requisite time for discovery.  The highly-competitively sensitive distribution agreements that Newsmax covets are not going anywhere.

**III.     The Wisconsin Decision Refusing To Stay Discovery Four Months Ago Under A Different Standard And Different Facts Provides No Basis For Denying This Motion.**

The denial of Fox's motion to stay discovery while the case was on a forum-shopping sojourn in Wisconsin provides no basis for denying the current motion for multiple reasons.[4]

*First*, now that the case is back in this Court, this Court has inherent authority to manage its docket and is not bound by the Wisconsin decision.  *See, e.g.*, *Whatru Holding LLC v. Bouncing Angels Inc.*, 2014 WL 12629952, at *2 (C.D. Cal. Sept. 18, 2014).

*Second*, and more important, the prior motion was decided under a different legal standard that does not apply in this Court.  As noted above, the magistrate judge in Wisconsin has a standing order stating that "[t]he court does not stay discovery when the defendant files a motion to dismiss before the preliminary pretrial conference," Wis. M.J. Standing Order, at 2, and she based her ruling from the bench on the ground that a motion to stay discovery faces "pretty strong headwinds in this district" because staying discovery "really does go against the grain" in the Western District of Wisconsin.  Dkt. 43 at 23.  In addition, the magistrate judge expressly declined to make "any predictions as to whether the motion [to dismiss] is ultimately going to be successful," *id.* at 24, and instead denied the stay of discovery even though she conceded that Fox "could very well win the day on the motion to dismiss," *id.*  In this Court, by contrast, Eleventh Circuit precedent "instruct[s]" that "facial challenges to the legal sufficiency of a claim or defense," including

---

[4] Pursuant to Local Rule 7.1(e), Fox has attached the Affidavit of Patrick F. Philbin describing the earlier decision and different circumstances before this Court.

motions to dismiss, should be "resolved before discovery begins," *Moore v. Potter*, 141 F. App'x 803, 807–08 (11th Cir. 2005) (quoting *Chudasama*, 123 F.3d at 1367), and in implementing that precedent, courts have routinely explained that courts should take a "preliminary peek" at the merits of a motion to dismiss to gauge whether it is has a substantial chance of eliminating the case, *see, e.g.*, *McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at *1 (S.D. Fla. Jan. 15, 2026). The Wisconsin magistrate judge refused to entertain that analysis, and it overwhelmingly favors a stay.

The only reason Fox's earlier motion to stay was decided under the Western District of Wisconsin standards was Newsmax's brazen forum shopping. Newsmax should not be allowed to lock in benefits from that improper conduct—and gain access to Fox's competitively sensitive carriage agreements in the process—when the motion to stay would have been decided differently if it had been heard in this Court to begin with. The Court should consider the motion to stay *de novo* under the standards in this district without giving any weight to the ruling from Wisconsin.

***Third***, there are also additional facts before the Court now that were not available when the Wisconsin magistrate judge ruled. Newsmax's glaringly deficient interrogatory responses suggest that Newsmax had no basis for allegations in its complaint and is now embarking on a fishing expedition hoping that discovery will uncover something to salvage its defective complaint. *See supra* pp. 12–14. That new development also overwhelmingly favors staying discovery, and it was not a factor that the Wisconsin court could have considered.

## CONCLUSION

The Court should stay all discovery until it has decided Fox's motion to dismiss.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Pursuant to Local Rule 7.1(a)(3), undersigned counsel hereby certifies that counsel for Fox

has conferred with all parties or non-parties who may be affected by the relief sought in the motion

in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

DATED: May 4, 2026

Respectfully submitted,

Bradley J. Bondi (Florida Bar No. 162396)
Michael F. Murray (*pro hac vice*)
Benjamin W. Snyder (*pro hac vice*)
Ronald K. Anguas (*pro hac vice*)
**PAUL HASTINGS LLP**
2050 M Street NW
Washington, DC 20036
Telephone: 202.551.1700
bradbondi@paulhastings.com
michaelmurray@paulhastings.com
bensnyder@paulhastings.com
ronaldanguas@paulhastings.com

*/s/ Christopher M. Kise*
Christopher M. Kise (Florida Bar No. 855545)
Lazaro P. Fields (Florida Bar No. 1004725)
**CONTINENTAL PLLC**
215 South Monroe Street, Ste. 750
Tallahassee, FL 32301
Telephone: 850.270.2211
ckise@continentalpllc.com
chris@ckise.net
lfields@continentalpllc.com

Paul T. Cappuccio (*pro hac vice*)
Patrick F. Philbin (*pro hac vice*)
Cody L. Reaves (*pro hac vice*)
**TORRIDON LAW PLLC**
801 17th Street NW, Suite 1100
Washington, DC 20006
Telephone: 202.249.6900
pcappuccio@torridonlaw.com
pphilbin@torridonlaw.com
creaves@torridonlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2026, I electronically filed the foregoing with the Clerk of

Court using CM/ECF, which will send notification of such filing to all counsel of record.

*/s/ Christopher M. Kise*
Christopher M. Kise (Florida Bar No. 855545)
**CONTINENTAL PLLC**
215 South Monroe Street, Ste. 750
Tallahassee, FL 32301
Telephone: 850.270.2211