**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:26-CV-80467-EA**

**NEWSMAX BROADCASTING, LLC,**

*Plaintiff*,

v.

**FOX CORPORATION AND FOX NEWS NETWORK, LLC,**

*Defendants*.

**DEFENDANTS' *EXPEDITED* MOTION TO STAY ORDER (DKT. 156) COMPELLING PRODUCTION AND REQUEST FOR HEARING[1]**

[1] Fox attempted to file this motion on the evening of Friday, September 11, 2026 and again on the morning of Saturday, September 12, 2026, but was unable to do so because of an outage in the Court's CM/ECF system. Fox then served the motion on Newsmax via e-mail on the morning of Saturday, September 12, 2026 and will file the motion with the Court as soon as the Court's CM/ECF system comes back online.

# INTRODUCTION

Fox respectfully requests this Court's expedited review and stay of Magistrate Judge Reinhart's order compelling Fox to produce competitively sensitive discovery to Newsmax before the Court has ruled on Fox's pending motions to stay discovery and to dismiss Newsmax's deficient complaint. Fox needs a ruling on the relief sought in this motion by September 23, 2026 because of the September 24, 2026 compelled production deadline set in Magistrate Judge Reinhart's order.

Newsmax—Fox's direct competitor—recently moved to compel Fox to disclose "carriage agreements" with Fox's distributors stretching back all the way to 2013. Newsmax further demanded that Fox reveal internal communications showing Fox's confidential business strategies related to those carriage agreements. Dkt. 100 (Motion to Compel). On September 10, 2026, Magistrate Judge Reinhart granted Newsmax's motion in part, requiring Fox to start producing within two weeks its top 10 carriage agreements dating back to 2019. *See* Dkt. 156. Judge Reinhart acknowledged that Fox had a pending motion to stay discovery, but, because this Court had neither ruled on the motion to stay nor referred it to the Magistrate for decision, Judge Reinhart concluded that discovery must proceed.

This Court's immediate intervention is required to avoid severe prejudice and to comply with the Eleventh Circuit's clear instruction that motions to dismiss "should . . . be resolved before discovery begins." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308–09 (11th Cir. 2020) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)); *see also Jacobs v. Tempur-Pedic Int'l, Inc.*, 2007 WL 4373980, at *2 (N.D. Ga. Dec. 11, 2007), *aff'd*, 626 F.3d 1327 (11th Cir. 2010) (motions to dismiss in antitrust cases especially "serve the useful function of ending non-meritorious cases before a defendant is subjected to possibly extensive

discovery and litigation costs"). Here, Fox's motion to dismiss Newsmax's flawed claims has been pending (in one court or another) for almost 10 months and a motion to stay discovery has been fully briefed before this Court since late May. Forging ahead with competitively sensitive discovery now would contravene Eleventh Circuit precedent, and further would ignore that such precedent is especially applicable to antitrust cases. As the Eleventh Circuit has explained, ruling on a motion to dismiss avoids "the expensive and settlement-inducing quagmire of antitrust discovery" where the plaintiff fails to plead an antitrust violation in the first place. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1267 (11th Cir. 2019). Waiting for discovery until after a motion to dismiss has been decided also is necessary to respect the Supreme Court's warning in the antitrust context that courts should "tak[e] care to require allegations" sufficient to state a claim *before* "the potentially enormous expense of discovery." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007).

Allowing the Magistrate Judge's order to go into effect now would effectively deny Fox's motion to stay discovery before this Court has even had an opportunity to rule on it. The Court should preserve the status quo at least until it decides whether discovery should proceed at all.

That is especially true when the rationale for staying discovery pending a motion to dismiss—the possibility that no discovery will be needed at all—is implicated by Newsmax's long-running failure to state sufficient claims. After Judge Cannon dismissed Plaintiff's complaint *sua sponte* as a deficient pleading, *Newsmax Broad., LLC v. Fox Corp.*, No. 25-cv-81091-AMC (S.D. Fla.), Dkt. 9, Newsmax re-filed in the Western District of Wisconsin, which recognized Newsmax's transparent "forum (or at least judge) shopping," and transferred Newsmax's claims back to this District. *See* Dkt. 56 at 6 (Order Granting Mot. to Transfer). Fox re-filed its motion to dismiss in this Court, but Newsmax—in an apparent admission that the complaint still fails to

state a claim—recently sought leave to amend for a second time. *See* Dkt. 127. However, even Newsmax's proposed amendments cannot cure the pleading deficiencies that have plagued this case from the beginning.

The equities similarly weigh heavily in favor of a stay. Any result other than a stay risks irreparable harm to Fox, which will be forced to disclose competitively sensitive information to an asserted competitor. By contrast, there is no reciprocal risk of prejudice to Newsmax. Newsmax cannot claim harm merely from waiting to receive discovery until the Court determines whether it has stated valid antitrust claims in the first place.

Fox respectfully therefore moves under Federal Rule of Civil Procedure 72(a) and Southern District of Florida Magistrate Judge Rule 4(a) to stay the parts of the Magistrate Judge's September 10, 2026 Order compelling Fox's production of its carriage agreements and associated communications, *see* Dkt. 156 at 2, until this Court has ruled on Fox's Motion to Stay Discovery, Dkt. 102. In the alternative, Fox moves to stay the Order until the Court rules on Fox's forthcoming objections. *See* Fed. R. Civ. P. 72(a).

**<u>REQUEST FOR HEARING</u>**

Fox respectfully requests a hearing of no more than 30 minutes as early as possible because Fox should not be compelled to produce competitively sensitive documents at least until a ruling is made on Fox's pending motion to stay discovery, which explains in even further detail why disclosure is inappropriate before Fox's motion to dismiss is decided. Any other result risks severe prejudice and irreparable harm to Fox, which will irrevocably be forced to disclose competitively sensitive information to an asserted competitor. There is no reciprocal risk of prejudice to Newsmax, which cannot claim harm merely from waiting to receive discovery related to meritless antitrust claims Newsmax has failed to plead. The expedited treatment of this motion and a swift

hearing will ensure that Fox is not injured by unwarranted exposure of its commercially sensitive information while balancing against the lack of any genuine time-sensitivity in Newsmax's requested discovery.

For these reasons and those discussed below, the Court should grant Fox's Motion to Stay on an expedited basis.

## BACKGROUND

### A. Newsmax Files Suit—First in Florida, Then in Wisconsin.

This case arises from an antitrust complaint originally filed in this Court on September 3, 2025. *Newsmax Broad., LLC v. Fox Corp.*, 2025 WL 2553698, at *1 (S.D. Fla. Sept. 5, 2025). Newsmax's initial complaint was so flawed that Judge Cannon dismissed it *sua sponte* the very next day as an impermissible "shotgun pleading," citing Eleventh Circuit precedent. *Id.*, Dkt. 9 at 1–2 (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015)). Rather than amend, Newsmax voluntarily dismissed its Complaint a week later and refiled a materially identical complaint in the Western District of Wisconsin that same day. Dkt. 1. Fox moved to transfer the case back to this district, Dkt. 9, and while that motion was pending also filed a motion to dismiss on November 25, 2025, Dkt. 30. Given that neither Newsmax nor the Complaint's allegations bore any connection to Wisconsin, the district court there granted Fox's motion to transfer the case back to this Court on April 23, 2026, holding that Newsmax had engaged in "forum (or at least judge) shopping." Dkt. 56.

### B. Fox's Motion to Dismiss and Motion to Stay Discovery in This District.

On May 8, 2026, Fox refiled its motion to dismiss, which points out the continued glaring deficiencies in Newsmax's allegations. Among other problems, Newsmax's alleged market for "right-leaning pay TV news" is implausibly narrow and defined by political viewpoint rather than

economic substitutability. *See In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*, 151 F.4th 922, 934 (7th Cir. 2025) (holding that a plaintiff cannot plausibly allege an antitrust market through conclusory assertions about the preferences of a particular subgroup of consumers). Newsmax further pleads no facts identifying an exclusive-carriage or "drag-down" term, substantial foreclosure, monopoly power, or injury to competition—only Newsmax's own alleged losses in distribution, brand exposure, and revenue. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (an antitrust plaintiff "must allege and prove harm, not just to a single competitor, but to the competitive process, *i.e.*, to competition itself").

Contemporaneously with its motion to dismiss, Fox moved to stay discovery, invoking Eleventh Circuit precedent holding that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins." *Isaiah*, 960 F.3d at 1308–09; *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). Newsmax then moved to amend its complaint yet again. *See* Dkt. 127.

All three motions are fully briefed and remain pending before this Court. *See* Dkts. 101-103, 105-106, 110, 119, 127.

**C. The Motion to Compel and Magistrate Judge Reinhart's Order.**

While this case still was pending in the Western District of Wisconsin, Newsmax served sweeping discovery requests seeking production of Fox's most sensitive commercial materials. On February 11, 2026, Newsmax demanded "[a]ll" Fox carriage agreements dating to January 1, 2013—including "all amendments, renewals, side letters, schedules, exhibits, appendices, and attachments"—and "[a]ll Communications with any Distributor concerning carriage of [Fox's] Channels." Dkt. 108-1 at 11. After Fox objected to producing these materials, Newsmax moved

to compel. Meanwhile, Fox's Motion to Dismiss and Motion to Stay Discovery remained pending. Dkts. 101, 102.

On September 10, 2026, Magistrate Judge Reinhart entered an order requiring Fox to produce its carriage agreements with its top ten (10) distributors between 2021 and 2025 by September 24, 2026, and to produce the remaining top ten (10) carriage agreements dating back to September 1, 2019, by October 12, 2026. *Id.* ¶¶ 3, 7. The Order also requires Fox to begin rolling productions of communications concerning carriage agreements between Fox and its distributors by November 9, 2026. *Id.* ¶ 8.

## LEGAL STANDARD

A district court has "broad discretion to stay proceedings as incident to its power to control its own docket," including "where a stay would promote judicial economy and efficiency." *Bonilla v. Librati*, 2022 WL 4597805, at *3 (S.D. Fla. June 6, 2022) (internal quotations omitted). Local Rule 7.1(d)(2) separately permits expedited consideration of a time-sensitive motion when good cause supports a ruling by a date certain.

Alternatively, "[u]nder the 'traditional standard for a stay,'" courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (internal quotation omitted).

This Court further has authority to stay compliance with a magistrate judge's discovery order while reviewing timely objections. *See* Fed. R. Civ. P. 72(a); S.D. Fla. Magistrate R. 4(a)(1). Courts grant such relief where immediate compliance would undermine meaningful review or

cause harm that could not be undone after the objections are decided. *See U. S. v. Doe No. 2*, 2009 WL 10720338, at *1 (S.D. Fla. Oct. 23, 2009) (staying compliance with a magistrate judge's order pending review); *Fox Haven of Foxfire Condo. IV Ass'n v. Nationwide Mut. Fire Ins. Co.*, 2014 WL 12617961, at *2 (M.D. Fla. Nov. 20, 2014) (granting a stay of a magistrate judge's order pending resolution of objections).

## ARGUMENT

The Court should stay the Magistrate Judge's Order to prevent disclosure of competitively sensitive documents to a direct competitor and to allow this Court time to address Fox's Motion to Stay Discovery and/or, in the alternative, Fox's objections.

### A. The Court Should Stay the Magistrate Judge's Order Pending a Ruling on Fox's Motion to Stay Discovery and Motion to Dismiss Newsmax's Defective Complaint.

The Court should stay the Magistrate Judge's Order compelling Fox to disclose competitively sensitive documents until such time as the Court rules on Fox's Motion to Stay Discovery.

For the reasons explained in the Motion to Stay, a stay of discovery is warranted and likely to be granted. The Eleventh Circuit has made clear that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins." *Chudasama*, 123 F.3d at 1367; *accord Isaiah*, 960 F.3d at 1309; *see also* Dkt. 103 at 10-12 (collecting Eleventh Circuit authority supporting stay). A stay of discovery is especially appropriate where a "motion to dismiss present[s] a potential resolution to the case that require[s] no further findings of fact[s]." *Olufemi v. Exclusive Ass'n Mgmt.*, 2024 WL 710547, at *1 (11th Cir. Feb. 21, 2024). In such cases, "neither the parties nor the court have any need for discovery before the court rules on [such a] motion," *Chudasama*, 123 F.3d at 1367, and so "[Eleventh Circuit] precedent dictates that the district court should rule on the motion before

discovery." *Olufemi*, 2024 WL 710547, at *1.

Newsmax's antitrust claims are likely to be resolved on the pleadings without the need for discovery. The original complaint *already* was dismissed by Judge Cannon. *See Newsmax Broad., LLC v. Fox Corp.*, No. 25-cv-81091-AMC (S.D. Fla. Sept. 3, 2025), Dkt. 9. Newsmax's refiled complaint suffers from a host of fatal defects, none of which are fixed in the proposed amended complaint (which Newsmax should not be granted leave to file, *see* Dkt. 141 (Fox's Opposition to Newsmax's Motion for Leave to File First Amended Complaint)). Those defects included failure to plausibly allege a cognizable antitrust market or injury to *competition*, as distinct from an injury simply to Newsmax itself. Dkt. 101 (Motion to Dismiss) at 9-16; Dkt. 103 (Motion to Stay Discovery) at 11–12. As Newsmax concedes, its proposed amended complaint "does not materially alter the core theory of [its] case." Dkt. 127 at 1.

Antitrust cases, moreover, are especially likely to warrant stays of discovery. The Supreme Court's landmark decision in *Twombly* recognized that courts should require plausible antitrust allegations *before* requiring the "potentially enormous expense of [antitrust] discovery." 550 U.S. at 558–60. The Eleventh Circuit similarly warns against sending the parties "into the expensive and settlement-inducing quagmire of antitrust discovery" unless a complaint can survive a motion to dismiss. *Quality Auto Painting*, 917 F.3d at 1267–68. Here, however, the Magistrate Judge's Order compels discovery of documents that are competitively sensitive, as discussed below. *See* Part B, *infra*. Allowing the Magistrate Judge's discovery order to go into effect would, as a practical matter, deny Fox's motion to stay discovery without any court applying the Eleventh Circuit's precedents calling for discovery to wait until *after* a motion to dismiss has been decided. The Magistrate Judge made clear that he was not considering those decisions because the Motion to Stay had not been referred to him. *See* Hr'g Tr. 6:10-20.

The Court should not force Fox to disclose these competitively sensitive documents until the Court considers and rules on Fox's Motion to Stay Discovery. *See generally* Dkt. 103 (Motion to Stay Discovery).

**B. The Magistrate Judge's Order Compels Disclosure of Competitively Sensitive Information and Threatens Irreparable Harm.**

A stay further is warranted because Fox faces prejudice and irreparable harm from forced disclosure of competitively sensitive materials. As Fox's President of Distribution explains in a sworn declaration, the "carriage agreements" at issue contain some of "the most closely guarded and competitively sensitive business information in the pay-television industry." *See* Dkt. 109, ¶ 5. "Each carriage agreement contains a range of commercially negotiated terms reflecting Fox's competitive strategy and market position." *Id.* Carriage agreements are separately negotiated with each individual distributor—"neither side knows the specific terms of other agreements executed by its counterparty," an information asymmetry that "preserv[es] the integrity of independent, arms-length bargaining." *Id.* ¶ 6. "If one programmer knew his competitor's affiliate fee rates and other key commercial terms with specific distributors, that programmer could use that knowledge to undercut, match, or strategically exploit those terms in its own negotiations with the very same distributors." *Id.* Precisely because carriage agreements are so sensitive, Fox ordinarily "treats its carriage agreements with the highest level of internal confidentiality," and Fox personnel are instructed "not to discuss deal terms outside their respective team." *Id.* ¶ 7. "Fox understands that this strict confidentiality approach is standard in the industry, as much of the information contained in carriage agreements is highly confidential, proprietary, and competitively sensitive." *Id.*

Compelled disclosure of these sensitive materials will cause irreparable harm. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lovekamp*, 2001 WL 810749, at *4 (N.D. Fla. July 16, 2001) ("Under Florida law, the use of 'specific trade secrets' and 'customer lists' is presumed to

result in irreparable injury."); *Arclin USA, LLC v. Vits Tech. GmbH*, 2020 WL 10056276, at *9 (N.D. Ga. Apr. 29, 2020) ("District courts in the Eleventh Circuit consistently hold that loss of competitive advantage from the use and disclosure of confidential information constitutes irreparable harm."). Even if disclosure is subject to a protective order, that cannot eliminate the harm Fox faces from disclosure in the first place. *See*, *e.g.*, *In re BayCare Med. Grp., Inc.*, 101 F.4th 1287, 1290 (11th Cir. 2024) (protective orders may be insufficient because "disclosure . . . cannot be undone—regardless of what protective measures the court may order"); *Alaska Air Grp., Inc. v. Anthem, Inc.*, 2025 WL 1091316, at *4 (N.D. Ala. Apr. 7, 2025) (protective orders "cannot entirely mitigate the risk of disclosure of the competitively sensitive *internal* communications and analyses").

Disclosure also will cause irreparable harm by harming Fox's distributor relationships. As Fox's President of Distribution further explains: "Production also negatively impacts Fox's distributor relationships" because "[c]onsistent with its contractual mutual confidentiality obligations, Fox must notify its distributor counterparties before disclosing carriage agreements in litigation." Dkt. 109 ¶ 11. "That notification process is burdensome in itself—Fox must identify the particular provisions governing notification in each carriage agreement, the individuals entitled to receive notice . . . and confirm whether any subsequent amendments have altered the applicable framework." *Id.* Further, "[n]otification of disclosure often causes substantial concern for distributors regarding the exposure of commercial terms to third parties whose handling of the data remains outside the distributors' control." *Id.* ¶ 12. "Notably, many of these distributors may maintain carriage agreements with Newsmax or are actively negotiating with Newsmax for carriage." *Id.*

**C. Newsmax Will Not Be Injured by a Stay.**

Newsmax faces no similar prejudice from a short stay—particularly when Fox's dispositive motion to dismiss is pending. *See Betancourt v. Corporacion Hotelera Palma LLC*, 2024 WL 5110074, at *1 (S.D. Fla. Nov. 15, 2024), *report and recommendation adopted,* 2024 WL 5108402 (S.D. Fla. Dec. 13, 2024) (granting motion to stay discovery while defendant's motion to dismiss was pending since "[a] temporary stay of discovery will not unduly prejudice [plaintiff] because the case is in its early stages."). The documents are existing business records, not fragile testimony, and there is no risk that the requested agreements will disappear while the Court assesses whether discovery should go forward and whether Newsmax has pleaded viable antitrust claims (which it has not).

Newsmax may assert that the case has upcoming discovery deadlines—but those deadlines also are not a source of harm. They easily can be reset following resolution of Fox's Motion to Dismiss (if any discovery even remains necessary after that). A stay in fact is likely to *benefit* Newsmax by saving Newsmax, too, from discovery expense that likely will prove unnecessary following resolution of Fox's Motion to Dismiss.

**D. The Public Interest Favors a Stay**.

The public interest further favors a stay because orderly judicial review promotes proportional discovery, protects competitively sensitive information, and conserves judicial resources. "The public interest in judicial economy and efficiency will be promoted by a stay in these proceedings, because a stay 'will free up judicial resources without any unfair prejudice or burden on the Plaintiff.'" *Zia v. CitiMortgage, Inc.*, 2016 WL 1230597, at *3 (S.D. Fla. Mar. 22, 2016) (granting stay pending Supreme Court review of dispositive issue).

The public interest further favors protecting the confidentiality of competitively sensitive

information and weighs against sharing of competitively sensitive information between competitors. A temporary stay will further that public interest and ensure that Fox would be required to share competitively sensitive information only after the Court determines that discovery should go forward in this case (if discovery goes forward at all).

## CONCLUSION

For the foregoing reasons, Fox respectfully requests that the Court grant this Expedited Motion and stay the Magistrate Judge's September 10, 2026, Order Granting Plaintiff's Motion to Compel Discovery, Dkt. 156, pending resolution of Fox's Motion to Stay or its timely objections under Rule 72(a) and 28 U.S.C. § 636(b)(1)(A).

Because compliance with the September 10, 2026, Order is due on September 24, 2026, Dkt. 156, **Fox respectfully requests—pursuant to Local Rule 7.1(d)(2)—expedited briefing and consideration such that this Court rules on the relief sought in this motion by September 23, 2026**. This will ensure *both* (i) that this Court weighs in before Fox potentially has to produce the highly sensitive information at issue; *and* (ii) that Fox will be able to timely comply with any portion of the September 10, 2026, Order that remains in effect.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies that counsel for Fox attempted to confer with counsel for Newsmax on September 11, 2026 via telephone and e-mail at approximately 6:30 p.m. ET in a good-faith effort to resolve the issues raised in this Motion. Counsel for Fox was unable to reach counsel for Newsmax by telephone and did not receive a response to the e-mail communication as of the time of this filing.

Respectfully submitted,

Patrick F. Philbin (*pro hac vice*)
Cody L. Reaves (*pro hac vice*)
**TORRIDON LAW PLLC**
801 17th Street NW, Suite 1100
Washington, DC 20006
Telephone: 202.249.6900
pcappuccio@torridonlaw.com
pphilbin@torridonlaw.com
creaves@torridonlaw.com

*/s/ Jason Gonzalez*
Paul C. Huck, Jr. (Florida Bar No. 968358)
Jason Gonzalez (Florida Bar No. 146854)
Joshua Webb (Florida Bar No. 51679)
Thomas Bardenwerper (Florida Bar No. 1044458)
**LAWSON HUCK GONZALEZ, PLLC**
101 E. College Avenue, 5th Floor
Tallahassee, FL 32301
Telephone: 850.825.4334
paul@lawsonhuckgonzalez.com
jason@lawsonhuckgonzalez.com
josh@lawsonhuckgonzalez.com
thomas@lawsonhuckgonzalez.com

Michael F. Murray (*pro hac vice*)
Benjamin W. Snyder (*pro hac vice*)
Ronald K. Anguas, Jr. (*pro hac vice*)
**PAUL HASTINGS LLP**
2050 M Street NW
Washington, DC 20036
Telephone: 202.551.1700
michaelmurray@paulhastings.com
bensnyder@paulhastings.com
ronaldanguas@paulhastings.com

Christopher M. Kise (Florida Bar No. 855545)
Lazaro P. Fields (Florida Bar No. 1004725)
**CONTINENTAL PLLC**
215 South Monroe Street, Ste. 750
Tallahassee, FL 32301
Telephone: 850.270.2211
ckise@continentalpllc.com
lfields@continentalpllc.com

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2026, counsel of record for Plaintiff was served a copy of the foregoing by email, and that as soon as possible the foregoing will be filed with the Clerk of Court using CM/ECF, which will send notification of such filing to all counsel of record.

*/s/ Jason Gonzalez*
Attorney